**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL FORMOSA,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **CIVIL ACTION NO. 1:CV-05-2157** |
| **JO ANNE B. BARNHART,** | : | **(KANE, C.J.)** |
| **Commissioner of** | | **(MANNION, M.J.)** |
| **Social Security** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the Plaintiff's claims for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under Titles II and XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.


## I. PROCEDURAL HISTORY.

The Plaintiff protectively filed applications for DIB and SSI on October 27, 2003, alleging disability since October 17, 2003 due to hepatitis C, chronic back and knee syndrome, reflex sympathetic dystrophy (RSD), arthritis, an affective disorder, and an anxiety-related disorder. (TR. 13, 63-65, 83). The Plaintiff's claims were denied initially. (TR. 53-57). The Plaintiff filed a timely request for a hearing (TR. 58) and a hearing was held before an administrative law judge (ALJ) on June 30, 2005. (TR. 22-50). The Plaintiff, represented by counsel, testified and a vocational expert (VE) testified at the hearing. *Id.*

The Plaintiff was denied benefits pursuant to the ALJ's decision of July

13, 2005.  (TR. 10-19).  The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  (TR. 8-9).  42 U.S.C. § 405(g).  That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 11 and 14).

## II.  STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

2

> whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (2004).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. § 404.1520.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(b).  The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. § 404.1520(c).  The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.  20 C.F.R. § 404.1520(d).

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work.  20 C.F.R. §§404.1520(e)-(f).  The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant

numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). This is Step Five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act. (TR. 14). At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful work activity since his alleged disability onset date, October 17, 2003. (TR. 14). At step two, the ALJ concluded that the Plaintiff's hepatitis C, chronic knee and back syndrome, reflex sympathetic dystrophy, arthritis, affective disorder, and anxiety-related disorder were severe, in combination, within the meaning of the Regulations. (TR. 14).

At step three, the ALJ found that Plaintiff's severe impairments were not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (TR. 14-15). The ALJ paid particular attention to Sections 1.00 *et seq.* (Musculoskeletal System) and 12.00 *et seq*. (Mental Disorders) of Appendix 1, but found that Plaintiff failed to meet the listing requirements. (TR. 15). 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 1.00, 12.00.

At step four, the ALJ found that the Plaintiff was not able to perform his past relevant work. (TR. 15). At step five, the ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform light and sedentary work. (TR. 15). The ALJ found that a significant number of jobs exist in the regional, state, and national economy which the Plaintiff could perform. (TR. 19). Using Medical Vocational Rules 201.28 and 202.21 and the testimony of the impartial VE as a framework, the ALJ concluded that the Plaintiff was

4

not disabled within the meaning of the Act. (TR. 14, 19). 20 C.F.R. §§404.1520(g) and 416.920(g).

## IV.  BACKGROUND.

### A.  Factual Background.

The Plaintiff was thirty-eight years old at the alleged onset date of disability, making him a "younger" individual under the Regulations. (TR. 14, 26).  20 C.F.R. § 416.963(c) (2004).  He has a high school education, receiving a graduate equivalency diploma (GED).  (TR. 27, 41).  Plaintiff attended technical school earning a Class A Commercial Driver's License (CDL).  (TR. 27).  Plaintiff has past work experience as a truck driver.  The relevant time period for this case is October 17, 2003, the date of onset, through July 13, 2005, the date of the ALJ's decision.

Plaintiff testified that his disability stems from chronic hepatitis C, chronic back and knee syndrome, reflex sympathetic dystrophy, arthritis, an affective disorder, and an anxiety-related disorder. (TR. 35-36).  Plaintiff was diagnosed with hepatitis C in 1997 and six months after his diagnosis he went into remission until 2003.  (TR. 129, 143, 179, 232).  Plaintiff testified that he has herniated and bulging discs in his back and degenerative disc disease.  (TR. 36). Plaintiff fell on his left wrist causing RSD and requiring reconstructive surgery in 1997.  (TR. 30, 36).  On January 29, 2005, Plaintiff had a spinal cord stimulator implanted in his spine to treat the RSD.  (TR. 29).  He also injured his knee in that fall resulting in knee surgery in 2002. (TR. 30, 36).  Plaintiff testified that his knee is better now.  (TR. 36).  He stated that he is in therapy one to two times a month for mental health treatment.  (TR. 37-38).

At the ALJ hearing, Plaintiff stated that the heaviest object he lifted recently was a cup of coffee.  (TR. 31).  He stated that he can push and pull

with his legs and feet; he can flex his legs and his right arm; but, he cannot reach overhead. (TR. 31-32). Before the spinal cord stimulator was implanted, Plaintiff stated that he could reach overhead with his right arm. (TR. 32). Plaintiff testified that he has problems going up and down stairs due to his back pain and dizziness, therefore his wife moved his bed to the first floor of the house so he can avoid stairs. (TR. 32, 42).

Plaintiff testified that he can walk about one block at a time and he can stand and sit for fifteen minutes at a time. (TR. 33). He stated that he goes to bed around 12:00 a.m. or 1:00 a.m. and he wakes up around 11:00 a.m. (TR. 34). Plaintiff testified that he sleeps about four hours per night. (TR. 34). He takes two naps per day for one to two hours. (TR. 41). Plaintiff was advised to quit smoking, but has not even tried to quit and does not plan on trying. (TR. 33). Plaintiff receives medical assistance and food stamps. (TR. 27).

Plaintiff relieves his pain by alternating from standing and sitting positions. (TR. 34). He also occasionally uses a heating pad or ice pack to ease his pain. (TR. 39). Plaintiff received spinal and nerve blocks and takes pain medications. (TR. 36-38). Plaintiff testified that he takes Trileptal, Seroquel, and Lexapro (all bipolar medications); Lisinopril (a blood pressure medication); Ultracet (a pain medication); Skelaxin (a muscle relaxer); Vicodin; Morphine; Motrin; and a Lidoderm patch. (TR. 36-38). He stated that the bipolar medications make him more docile, but uncoordinated and tired. (TR. 38). At the hearing, the ALJ asked the VE to define sedentary[1],

---

[1]

The VE defined sedentary work as "lifting only up to ten pounds and being able to sit and stand as needed." (TR. 45).

light[2], and medium[3] work and to explain Plaintiff's vocational background. (TR. 45). The VE testified that Plaintiff's work as a tow truck driver is classified as semi-skilled work in the medium duty physical exertion level. (TR. 46). His work as an over the road truck driver is classified as semi-skilled work in the medium duty physical exertion level. (TR. 46). His work as a garbage truck driver is classified as unskilled work in the heavy duty physical exertion level. (TR. 46). His work as a garbage collector is classified as unskilled work in the very heavy physical exertion level. (TR. 46). The VE also testified that Plaintiff possesses no transferrable skills. (TR. 46).

The ALJ then asked the VE to hypothetically consider an individual of the same age, education and past work experience as Plaintiff, with the ability to lift twenty pounds occasionally, ten pounds frequently; and stand or walk and sit for six hours in an eight-hour day. (TR. 46). The VE testified that such an individual could not perform Plaintiff's past relevant work but could perform other work in the regional and state economy. (TR. 46-47). The VE identified the jobs of a parking lot attendant with 30 jobs in northeastern Pennsylvania, and 690 jobs in the state of Pennsylvania; an office cleaner with 1,580 jobs in northeastern Pennsylvania, and 36,000 jobs in the state of Pennsylvania; and a packer with 800 jobs in northeastern Pennsylvania, and 18,400 jobs in the state of Pennsylvania. (TR. 47).

---

[2]

The VE defined light duty work as "lifting occasionally 20 pounds and frequently 10 pounds, with no restrictions on sitting and standing." (TR. 45).

[3]

The VE defined medium duty work as "lifting occasionally [up] to 50 pounds and 20 pounds occasionally." (TR. 45).

The ALJ then asked the VE to hypothetically consider an individual of the same age, education and past work experience as Plaintiff, with the ability to lift twenty pounds occasionally, ten pounds frequently; stand or walk for two hours in an eight-hour day; sit for six hours in an eight-hour day, with a sit/stand option every thirty minutes; could never crawl, climb or be around hazardous machinery or vibrations; could occasionally balance, stoop, kneel, and crouch; would have limited left arm reach; limited overhead reach; limited left arm handling; and be restricted to work with things rather than with people. (TR. 47). The VE testified that such an individual could not perform Plaintiff's past relevant work but could perform other work in the regional and state economy. (TR. 47-48). The VE identified the jobs of a video monitor dispatcher with 200 jobs in northeastern Pennsylvania, and 4,500 jobs in the state of Pennsylvania; and an inspector with 800 jobs in northeastern Pennsylvania, and 18,400 jobs in the state of Pennsylvania. (TR. 48).

Lastly, the ALJ asked the VE to hypothetically consider an individual of the same age, education and past work experience as Plaintiff, with the ability to lift ten pounds occasionally and frequently; stand for two hours in an eight-hour day; sit for six hours in an eight-hour day, with a sit/stand option every thirty minutes; could never crawl, climb or be around hazardous machinery or vibrations; could occasionally balance, stoop, kneel, and crouch; would have limited left arm reach; limited overhead reach; limited left arm handling; and be restricted to work with things rather than with people. (TR. 48-49). The VE testified that such an individual could not perform Plaintiff's past relevant work but could perform other work in the regional and state economy. (TR. 48-49). The VE identified the previously stated jobs of video monitor dispatcher and inspector. (TR. 49).

The VE then testified that a hypothetical individual that required breaks in excess of two per day could not perform Plaintiff's past relevant work nor

any other work in the national or regional economy.  (TR. 49).

### B.  Medical Background.

Plaintiff treated with Richard A. Hiscox, D.O., from August 2001 to December 2003.  (TR. 131-178).  Dr. Hiscox ordered MRIs of the lumbar, thoracic, and cervical spines.  (TR. 134).  Plaintiff underwent an MRI of the lumbar spine on July 23, 2003 which revealed mild disc desiccation and degeneration at L5-S1 with a left paracentral L5-S1 disc herniation with mild nerve root impingement, no stenosis, and canal narrowing at L4-5.  (TR. 163).  The MRI of the thoracic spine on July 23, 2003 revealed degenerative disc disease without evidence of herniation or stenosis, and normal thoracic cord and canal. (TR. 164). The MRI of the cervical spine on July 28, 2003 revealed mild disc dessication without disc space narrowing with a shallow disc bulge at C4-5 and bony changes at the C5-6 neural foramina with narrowing; there was no stenosis and no herniation; and the cervical cord was normal.  (TR. 157).

Plaintiff began treating with Richard D. Michaelstein, M.D., in 2003.  On August 1, 2003, Dr. Michaelstein noted that Plaintiff was very pleasant, in good health, and had hepatitis C. (TR. 179).  Plaintiff reported that he believed he contracted hepatitis C from tattoo needles in 1997.  (TR. 179).  Dr. Michaelstein stated that Plaintiff was treated with Rebetron for six months and the hepatitis C "apparently cleared." (TR. 179).  Plaintiff had no stigmata of chronic liver disease and his cardiopulmonary examination was normal.  (TR. 179).  Dr. Michaelstein recommended a liver biopsy which was performed on September 15, 2003.  (TR. 123-124, 295).  The liver biopsy was satisfactory. (TR. 123).  A CAT scan of the abdomen on September 15, 2003 revealed no evidence of liver hematoma or subcapsular hemorrhage.  (TR. 125, 295).

9

On January 13, 2004, Plaintiff was treated by dermatologist Paul R. Long, M.D., for a rash. (TR. 281-282). Dr. Long noted that Plaintiff was healthy, alert and was in no distress. (TR. 282). Dr. Long prescribed a moisturizer and discharged Plaintiff with no followup visit. (TR. 282).

Plaintiff treated with Margaret L. Campbell, Ph.D., from May 3, 2004 to May 2005. (TR. 230). Dr. Campbell completed a Medical Assessment Form on May 10, 2004. (TR. 231-232). Dr. Campbell diagnosed bipolar disorder and chronic hepatitis and opined that Plaintiff was disabled as of October 2003. (TR. 231). She noted that Plaintiff was chronically ill with hepatitis C relapses and has severe long term psychological problems. (TR. 231). Dr. Campbell opined that Plaintiff is permanently disabled and unable to care for his children and his fatigue and depression render him unable to perform consistently. (TR. 231).

On July 28, 2004, Dr. Campbell's Axis I diagnosis was major depression (recurrent and severe), she ruled out bipolar disorder, and diagnosed adjustment disorder with anxiety.[4] (TR. 232). Dr. Campbell's Axis II diagnosis was passive aggressive disorder and depressive personality disorder.[5]  (TR. 232). Dr. Campbell stated that Plaintiff is more depressed

---

[4]

The Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., published by the American Psychiatric Association, uses a multiaxial approach to diagnosis consisting of five axes. Axis I is where a clinician diagnoses the clinical syndromes in the patient's life, *i.e.*, "the diagnosis." AllPsych Online *at* http://allpsych.com/disorders/dsm.html

[5]

Axis II is where a clinician diagnoses the developmental disorders and personality disorders of the patient. AllPsych Online *at* http://allpsych.com/disorders/dsm.html

10

due to a hepatitis C relapse and the side effects of his medications.[6] (TR. 232). Dr. Campbell noted that Plaintiff's appearance was pale and sickly with good hygiene; his behavior was irritable, he had poor impulse control, with verbal loss of control with health providers and physical destruction of his own property; his speech was street tough and belligerent; he was unstable and hostile; he overreacted; he felt empty and weak; his thoughts were goal oriented; he was preoccupied with his illness, fatigue, helplessness, and hopelessness; his intelligence was low average; he had poor concentration; he was oriented; and he had very poor insight.  (TR. 234).  Dr. Campbell recommended anger management when his Interferon treatment was completed.[7]  (TR. 236).

Plaintiff was administered the Million Clinical Multiaxial Inventory-III (MCMI-III) on May 3, 2004.  (TR. 219-229).  The test revealed that Plaintiff may have Passive-Aggressive Personality Disorder, Depressive Personality Disorder with Schizoid Personality Traits, and Sadistic Personality Traits. (TR. 220). The MCMI-III also revealed that Plaintiff may have Major Depression (recurrent, severe, without psychotic features), Somatization Disorder (hypochondriacal features), and Adjustment Disorder with Anxiety. (TR. 220).   Therapeutic considerations included a brief and focused

---

[6]

Plaintiff reported the side effects of his medications include weakness, fatigue, diarrhea, chronic body and joint pain, vomiting, and vertigo. (TR. 232).

[7]

Interferon is a class of small protein and glycoprotein cytokines produced by T cells, fibroblasts, and other cells in response to viral infection and other biological and synthetic stimuli; used in the treatment of chronic hepatitis C. Stedman's Medical Dictionary, 911 (27th ed. 2000).

approach to therapy to moderate Plaintiff's emotions and behavior.  (TR. 220).

On January 7, 2005, Plaintiff underwent an x-ray of his left wrist.  (TR. 240).  The x-ray revealed a foreign body in the soft tissues of the left hand, an old healed fracture of the distal left radius, no evidence of a recent fracture or osteomyelitis, and arthritic changes in the left wrist joint.  (TR. 240).

Plaintiff treated with Mark H. Bell, M.D., a pain specialist in 2005.  (TR. 242-256).  On February 2, 2005, Dr. Bell diagnosed left upper extremity neuropathic pain, neck pain, low back pain, lumbar herniated nucleus pulposus (HNP), myofascial pain syndrome, left sacroiliac joint pain, and he ruled out RSD of the left upper extremity.  (TR. 256).  Dr. Bell noted that Plaintiff was in mild discomfort, he had full range of motion of the neck, and some paraspinous spasm and tenderness extending to the upper thoracic back. Plaintiff had slightly decreased grip in his left upper extremity and decreased shrug on the left side, and he was unable to bend his left wrist. His upper extremity reflexes were symmetrical. Plaintiff had full range of motion of the lumbar spine, he had left sacroiliac joint tenderness. His strength was normal in the lower extremities, his lower extremity reflexes were equal and symmetrical, his gait was grossly normal, and he could heel and toe walk.  Patrick's and Maitland's tests were positive on the left and negative on the right. (TR. 255).

In February and March 2005, Dr. Bell performed stellate ganglion blocks on Plaintiff.  (TR. 246-251).  On March 16, 2005, two weeks after the first injection, Plaintiff reported "significantly decreased pain in the left arm and hand."  (TR. 249).  He reported that he "was able to go about his activities of daily living far better and was extremely pleased with the results." (TR. 249).  Dr. Bell advised Plaintiff to come in more regularly for the

injections in order to receive their maximum benefit.  (TR. 249).  In May and April, 2005, Plaintiff received additional shots in his left hand by Mark M. Radziewicz, M.D.  (TR. 265). On May 13, 2005, Dr. Bell placed a trial Spinal Cord Stimulator in Plaintiff's vertebrae.  (TR. 244).

### C.  State-agency physicians' reports.

A Disability Determination Service (DDS) physician completed a Residual Functional Capacity (RFC) Assessment on March 22, 2004.  (TR. 211-218).  The doctor's primary diagnosis was hepatitis C.  (TR. 211).  The doctor found that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk and sit (with normal breaks) a total of six hours in an eight-hour workday; and push and/or pull unlimitedly. (TR. 212).  The doctor found no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (TR. 213-216).  The doctor noted that Plaintiff had a liver biopsy in September 2003 that showed no cirrhosis and mild fibrosis. (TR. 213).  The doctor lastly noted that Plaintiff had normal strength and full range of motion.  (TR. 213).

The state agency referred Plaintiff for a consultative examination in March 2004 with James Jiunta, D.O.  (TR. 190).  Plaintiff's chief complaints were hepatitis C, hypertension, and depression.  (TR. 190-191).  In relation to his hepatitis C, Plaintiff reported that he was not able to leave his house for the past year due to diarrhea; he has joint pain and constant fatigue; he sleeps twelve to fifteen hours a day; and has no appetite. (TR. 191). Dr. Jiunta found that Plaintiff "apparently, historically" has hepatitis C but was asymptomatic. (TR. 194).  Dr. Jiunta therefore advised the Agency to contact Dr. Michaelstein to confirm his treatment and subjective complaints.  (TR. 194-195). Dr. Jiunta also noted that Plaintiff stated he moved to Pennsylvania from New York because he heard it was "easier to get benefits here."  (TR.

13

195).

Plaintiff reported that his hypertension is controlled with Lisinopril. (TR. 191). Dr. Jiunta noted that Plaintiff had no sequella from the hypertension. (TR. 191). Plaintiff also reported to Dr. Jiunta that he takes Lexapro for his depression and he was not seeing a counselor or psychiatrist. (TR. 191). Dr. Jiunta noted that there were "no overt signs of anxiety or depression." (TR. 194). Dr. Jiunta also noted that Plaintiff had an open wrist fracture with open reduction in 1997, but the condition was stable; and, he had a left knee arthroscopy in 2003, but that condition was also stable. (TR. 194).

Plaintiff further alleges that his disability stems from an affective disorder. Joseph A. Barrett, Ph.D., a state-agency psychologist, reviewed Plaintiff's medical records on March 18, 2004. (TR. 197). Dr. Barrett completed a Psychiatric Review Technique Form and concluded that Plaintiff's impairments were not severe and there were coexisting non-mental impairments that required referral to another medical speciality. (TR. 197).

Dr. Barrett evaluated Plaintiff's condition under the requirements of Listing 12.04 (Affective Disorders). (TR. 197). The Supreme Court has held that a claimant must prove that his condition meets every criteria in a listing before he can be considered disabled *per se*. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is disabled *per se* under Listing 12.04 when she either satisfies the requirements of both 12.04(A) and 12.04(B), or of 12.04(C). Dr. Barrett found there was a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, however, Dr. Barrett found that although the impairment of depression was present, it did "not precisely satisfy the diagnostic criteria" of Listing 12.04(A). (TR. 200).

Under Listing 12.04(B), Dr. Barrett found there were mild restrictions of activities of daily living; mild difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence, or pace; and no episodes

14

of decompensation.  (TR. 207).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(B).  Dr. Barrett specifically found that the Plaintiff's mental impairments were not severe and did not meet Listing 12.04 (C).  (TR. 208).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).

The ALJ found that Plaintiff's "affective disorder does not present evidence of a full or partial manic or depressive syndrome satisfying the requisite level of severity."  (TR. 15).

## V.  DISCUSSION.

### A. Whether substantial evidence supports the ALJ's decision that Plaintiff can perform a significant range of light and sedentary work.

The Plaintiff argues that substantial evidence does not support the ALJ's decision that he can perform a wide range of light and sedentary work. (Doc. 11 at 6).

The Plaintiff first argues that the ALJ erred when she determined that the Plaintiff's severe impairments were not severe enough to meet or equal the listing of impairments in Appendix 1, Subpart P, Regulations No. 4.  (Doc. 11 at 7).  Plaintiff argues that the ALJ does not have the authority to make such a decision; that a medical advisor should have been present at the hearing to make the decision.  (Doc. 11 at 7).  However, the Regulations clearly state, "[w]e are responsible for making the determination or decision about whether you meet the statutory definition of disability."  20 C.F.R. §§404.1527(e)(1), 416.927(e)(1).  The Regulations further state,

> Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the   Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, *the final responsibility for deciding*

*these issues is reserved to the Commissioner.*
20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (emphasis added).

Before making a RFC determination, the State agency must develop the complete medical history, including arranging for a consultative examination(s) if necessary.  20 C.F.R. §§ 404.1525(a)(3), 416.945(a)(3). The Regulations also state, "when a State agency makes the disability determination, a State agency medical or psychological consultant(s) is responsible for assessing your residual functional capacity."  20 C.F.R. §§ 404.1526(a), 416.946(a). The State agency arranged for a consultative examination by Dr. Jiunta. (TR. 190-196).  20 C.F.R. §§ 404.1525(a)(3), 416.945(a)(3).  Dr. Barrett, a DDS psychologist, completed a Psychiatric Review Technique Form; and a DDS physician completed a RFC Assessment Form.  (TR. 197-210, 211-218).  20 C.F.R. §§ 404.1525(a)(3), 416.945(a)(3).  The ALJ used the reports and opinions from the medical and psychological consultants along with the objective and subjective evidence of record to determine that Plaintiff's impairments do not meet or equal the Listing requirements.  We find the ALJ was responsible for making the determination about whether Plaintiff met the requirements in the Listing of Impairments and she sustained her burden of fully developing Plaintiff's medical record by arranging medical consultations to aid in her decision.

The Plaintiff next argues that the ALJ erred in failing to find that Plaintiff met the requirements of Listing 12.04, Affective Disorders. (Doc. 11 at 9). The ALJ found there was no evidence of a full or partial manic or depressive syndrome satisfying the requisite level of severity and that Plaintiff did not meet the C criteria of Listing 12.04.  (TR. 15).

The burden is on the Plaintiff, who is "in a better position to provide information," to show a disability.  *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987).  To meet the required level of severity for Listing 12.04, the Plaintiff

16

had to meet either the A and B criteria or the C criteria of the listing.  To meet the requirements of A and B, the Plaintiff had to show "medically documented persistence, either continuous or intermittent, of one" of a number of enumerated A criteria symptoms, in addition to at least two of the following B criteria:

> 1.  Marked restriction of activities of daily living; or
>
> 2.  Marked difficulties in maintaining social functioning; or
>
> 3.  Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4.  Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(A), (B).

To meet the requirements of the C criteria of Listing 12.04, the Plaintiff had to show "[m]edically documented history of a chronic affective disorder of at least 2 years' duration" that had imposed a greater-than-minimal limitation on the Plaintiff's ability to do basic work activities, "with symptoms or signs currently attenuated by medication or psychosocial support," and either:

> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted

to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).

The DDS psychologist, Dr. Barrett, evaluated Plaintiff's condition under the requirements of Listing 12.04. (TR. 197). Dr. Barrett found there was a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, however, Dr. Barrett found that although the impairment of depression was present, it did "not precisely satisfy the diagnostic criteria" of Listing 12.04(A). (TR. 200).

Under Listing 12.04(B), Dr. Barrett found there were mild restrictions of activities of daily living; mild difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation. (TR. 207). 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(B)(1)-(4). On March 16, 2005, Plaintiff himself reported to Dr. Bell that after the stellate ganglion blocks, he "was able to go about his activities of daily living far better and was extremely pleased with the results." (TR. 249). Dr. Barrett specifically found that the Plaintiff's mental impairments were not severe and did not meet Listing 12.04 (C). (TR. 208). 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).

The ALJ credited the opinion of Dr. Barrett and found that Plaintiff did not meet the criteria of Listing 12.04. We agree and find that the ALJ has cited substantial evidence that the Plaintiff did not meet the requirements of Listing 12.04.

The ALJ also found that the Plaintiff did not meet any of the criteria of Listing 12.06. (TR. 15). The ALJ found that Plaintiff's anxiety-related

disorder does not present evidence of recurrent severe panic attacks or persistent irrational fear.  (TR. 15).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.06(A)(3).  Plaintiff presents no evidence to counter the ALJ's finding with regard to Listing 12.06.

We must stress that it is the claimant's burden to prove that his condition meets or equals the specific clinical requirements of a listed impairment such as Listings 12.04 or 12.06 before he can be considered to be disabled *per se* without consideration of vocational factors, such as age, education, and work experience.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citations omitted).  To be entitled to disability benefits, a claimant must show that all, not just some, of the criteria for a listing are met.  *Zebley*, 493 U.S. at 530. The Commissioner must make the legal determination as to whether an impairment meets or equals a listing.  *See* 20 C.F.R. § 404.1527(e)(1) and (2).

The ALJ found that Plaintiff's depressive and anxiety disorders do not meet any listing for mental impairment. (TR. 15). We agree and find that there is substantial evidence that the Plaintiff did not meet or equal criteria of Listings 12.04 or 12.06, at any time through the date of the ALJ's decision.

Lastly, the Plaintiff argues that the ALJ erred in finding that he has the RFC to perform light and sedentary work. (Doc. 11 at 12). Residual functional capacity is defined as follows:

> (a) *General.*  Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations.

20 C.F.R. § 404.1545(a).

The ALJ found that Plaintiff is capable of performing light and sedentary work.  As stated above, the ALJ specifically asked the VE to define

light work and sedentary work.  (TR. 26-27).  The VE clearly explained the definitions of light and sedentary work.  The ALJ posed several hypothetical questions to the VE, including all of Plaintiff's limitations.  (TR. 46-49).

The vocational expert was apprised of all the Plaintiff's functional limitations and thus took them into consideration when rendering her opinion. The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Clearly, the hypotheticals did include all of the Plaintiff's limitations which are supported by the record and based in part on objective tests. Therefore, there is substantial evidence to support the vocational expert's conclusions.

When considering a claimant's subjective complaints of pain, an ALJ must engage in a two-step analysis. First, an ALJ must determine if the alleged disabling pain could reasonably result from the medically determinable impairment; and second, the ALJ must consider the intensity and persistence of the claimant's disabling pain, and the extent to which it affects his ability to work. *See Diaz v. Commissioner of Social Security*, 39 Fed. Appx. 713, 714 (3rd Cir. June 12, 2002).

The distinction between exertional and nonexertional limitations is discussed in 20 C.F.R. §404.1569a.  Under that section, "[t]he classification of a limitation as exertional is related to the United States Department of Labor's classification of various jobs by various exertional levels (sedentary,

light, medium, heavy, very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing and pulling." 20 C.F.R. §404.1569a(a). When the restrictions affect the claimant's ability to meet job demands other than strength demands, the limitations are nonexertional. Examples of such nonexertional limitations are difficulty functioning because of nervousness, anxiety, depression, difficulty seeing, hearing, maintaining concentration and remembering.  20 C.F.R. §404.1569a(c).  In this case, Plaintiff alleges both exertional and nonexertional limitations.

The ALJ thoroughly examined all of the evidence presented to her. She reviewed the medical records and the treating and examining physicians' notes.  20 C.F.R. §§ 404.1529,  416.92; Social Security Ruling 96-7p.  (TR. 17).  She also considered Plaintiff's testimony regarding his pain and daily activities and capabilities. In her decision, the ALJ stated that Plaintiff "overstates his symptoms and [the ALJ] finds that his nonexertional limitations would not offset his ability to meet the demands of a wide range of light and sedentary work."  (TR. 17).

Contrary to Plaintiff's argument that "[n]ot one examining physician ever questioned his credibility or even suggested he was nothing (sic) than truthful," Dr. Jiunta specifically advised the Agency to contact Dr. Michaelstein to confirm Plaintiff's treatment and subjective complaints. (Doc. 11 at 8) (TR. 194-195).  Dr. Juinta also noted that Plaintiff reported he moved to Pennsylvania because he heard it was "easier to get benefits here."  (TR. 195).  Dr. Jiunta stated, "I would certainly have documentations supplied by Dr. Michaelstein with regard to his active treatment before I would go further with this particular case in considering it for permanent disability."  (TR. 195). Dr. Jiunta clearly questioned Plaintiff's credibility and truthfulness. We find substantial evidence supports the ALJ's decision that Plaintiff has the RFC for light and sedentary work.

We note that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")." *Frazier v. Apfel*, 2000 WL 288246, at *9 (E.D.Pa. 2000).  Of course, "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).  Yet subjective complaints, without more, do not in themselves constitute a disability.  *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).  Here, the Plaintiff's subjective complaints were not borne out by his medical records.

As previously discussed, a state agency physicians completed a RFC assessment on March 22, 2004 regarding the Plaintiff's physical abilities. (TR. 211-218).  The doctor found that the Plaintiff is not disabled.  The doctor opined that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk and sit (with normal breaks) a total of six hours in an eight-hour workday; and push and/or pull unlimitedly. (TR. 212). The doctor found no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations.  (TR. 213-216).

We find that substantial evidence supports the ALJ's decision that Plaintiff is capable of performing a significant range of light and sedentary work.

## VI.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be **DENIED**.

**s/ Malachy E. Mannion**
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:** January 12, 2007
O:\shared\REPORTS\2005 Reports\05-2157.01.wpd